John Cross, Surviving Partner of Andrew Cross, et al., *vs.* M. I. Cohen, et al.—*December* 1845.

A deed of trust was made to secure to each stockholder in an unincorporated association, a theatre, the right of free admission, until the sum lent and advanced by them for each share, to the managers and proprietors of such theatre, should be fully paid; the right of free admission being in lieu of interest, without impairing the right to receive the full principal; and in further trust, to secure the payment of all claims against the managers, for work, and labor, and materials, performed or furnished, for the use of the theatre, and for which the claimant now has, or hereafter shall have, a written acknowledgment signed by the said managers, there being two of them, or by either of them, in their joint names. A sale of the theatre being decreed, Held: that in the distribution of the proceeds, the stockholders had no priority over the material men.

Where it can be done without violating the plain and express terms of an instrument creating a trust, chancery will administer the fund which comes under its possession and control, under such trust, so as to give an equal portion to each creditor, which is considered but another mode of expressing its purpose, to do equal justice to all.

The order in which claims are mentioned and enumerated in a deed of trust, does not, *per se*, give any preference or priority of right.

There is no rule of equity which will afford relief to a party failing to comply with an express condition, except its performance be prevented by fraud, or fault of the adverse party, or by inability arising from unavoidable accident.

So where a claim, by the terms of a deed of trust, was required to be authenticated by a written acknowledgment, which the claimant "now has or hereafter shall have, signed by *W* and *B*, or by either of them, or in their joint names," the party, claimant, must comply with the condition.

But, although the written acknowledgment is not produced, a court of equity will entertain the enquiry, whether the condition has been in point of fact complied with.

33      v.3

Evidence that leaves no doubt of the fact, that at one time the claims were authenticated, as the deed required, yet that the certificates signed by *W* and *B*, were, at a subsequent period, surrendered, on an agreement to receive in lieu thereof, the certificate and promise of *W* alone, the claimants consenting to make no claim upon *B* personally, on the express condition, they should still hold their claim and lien under the mortgage to the trustees, shows, that the condition in the deed has been in fact complied with.

The parties were not required by the deed, to preserve the acknowledgment of their claims, and have it ready at all times to be produced with the claim.

The acceptance of the certificate of *W*, was no surrender of the claim under the trust. The property in the hands of the trustees, may be regarded as the primary and principal fund.

Where a creditor has a lien on a specific fund, an agreement to make no claim against one of two principals in a debt, on the express condition, that he shall retain the lien, will not defeat his remedy against the fund.

Where a bill was dismissed, not upon its merits, but under a rule further to proceed in the cause, it is not necessary to qualify the order of dismissal, by saying it shall be without prejudice to the rights of the complainants.

The act of 1832, ch. 302, sec. 5, provides, that no point relating to the competency of witnesses, or admissibility of evidence, shall be raised in the appellate court, unless it shall plainly appear by the record, that such point had been raised *by exceptions* filed in the cause in the chancery court.

The incompetency of a witness is not now noticed, unless objected to by exceptions.

It is an universal practice in chancery, that exceptions, like other formal papers, filed in a cause, must be signed by a solicitor of the court.

The return by an officer, before whom depositions are taken, by consent or by order of court, that objections were furnished to him to be filed, and filed in a cause, is not filing exceptions in the court of chancery, in compliance with the act of 1832, ch. 302.

The reservation of all legal exceptions usually inserted in an order of the court of chancery, permitting evidence to be taken in a cause, does not, since the act of 1832, ch. 302, authorise the Chancellor to make objections at the hearing, to the competency of a witness. That was formerly the practice of the court, but the act was passed to prevent it.

APPEAL from the Court of Chancery.

The claim in this cause, arose under the following deed :

"This indenture, made the 11th October 1816, between *William Warren* and *William B. Wood,* managers of the new theatre, on, &c., of the one part, and *William Gwynn, Fielding Lucas, Jr., John Frick, Jonathan Meredith,* and *George Hume Stewart,* all of, &c., trustees on behalf of the subscribers to the stock in the said theatre, of the other part. Whereas,

the several persons, whose names are contained in the list or schedule hereunto annexed, at the instance and request of the said *W. W.*, and *W. B. W.*, have heretofore subscribed for such and so many shares of stock in the *Baltimore Theatre* aforesaid, as are set opposite their respective names, and have advanced and paid to the said *W. W.*, and *W. B. W.*, the sum of $200 for each of the said shares of stock, to assist in erecting the said theatre on the three lots of ground on the east side of *Holliday* street, in the city of *Baltimore*, hereinafter particularly mentioned and described, on the express condition and promise of the said *W. W.*, and *W. B. W.*, that they would convey the said theatre, and the said three lots of ground on which the same is erected, to five persons, being stockholders as aforesaid. In trust, to secure to each and every of the said stockholders and his assigns, the right of free admission of one person for each share, to all performances which shall take place or be exhibited in the said theatre to a public audience, for pay or emolument, (except on such nights as the profits arising from the performance, shall be appropriated to the benefit of some actor or actors, who shall be under contract with the managers, to perform one whole season at least,) until the said sum of $200, so lent and advanced for each share respectively, should be fully paid to the said stockholders, severally, or their assigns; the right of free admission as aforesaid, to be deemed and considered as in lieu only of the interest on the said $200, without impairing the right to receive the full principal, and such right to each share of stock, to be assignable at the will of the stockholder, and the right of free admission to be transferable generally or for any special period, not less than one whole season. And further in trust, to secure the payment of all claims against the said managers, for work and labor, and materials, performed or furnished, for the use of the said theatre, and for which the claimant now has, or hereafter shall have, a written acknowledgment, signed by the said *W. W.*, and *W. B. W.*, or by either of them, in their joint names.

Now, therefore, this indenture witnesseth, that the said *W. W.*, and *W. B. W.*, for and in consideration of the above

recited premises, and for and in consideration, &c., have granted, &c., and by these presents do grant, &c., unto the said *William Gwynn, &c.*, the survivors or survivor of them, and the heirs and assigns of such survivor, all those three lots, &c. To have and to hold the said three lots, &c., above mentioned, and hereby granted, &c., unto them, the said *William Gwynn, &c.*, and the survivors or survivor of them, and to the heirs and assigns of such survivor, forever. In special trust and confidence, nevertheless, for the use, benefit and behoof of each and every of the subscribers to the stock in the said theatre mentioned, and their executors, administrators and assigns, respectively, to secure the said stockholders and their assigns, the right to free admission to all performances in the said theatre, (except as is herein before excepted,) with the full permission to transfer the use of such right for any one whole season or longer, as above specified, until the said *W. W.* and *W. B. W.*, their heirs, &c., or assigns, shall pay and satisfy the said respective stockholders or their assigns, the full sum of $200 for each share of stock subscribed, and acknowledged to be paid and advanced to the said *W. W.*, and *W. B. W.* And in further trust, to secure the payment of all claims for work, labor or materials for the said theatre, acknowledged and signed by the said *W. W.* and *W. B W.*, or either of them, as before mentioned; and it is hereby declared, to be the agreement, and true intent and meaning of the parties hereto, and of those interested in the said trust, that no claim shall be made by the said stockholders, or their assigns, for the payment of the sums of money advanced on the shares of stock to the said *W. W.*, and *W. B. W.*, nor by the said *W. W.* and *W. B. W.*, or their assigns, to destroy or put an end to the right of free admission, to which the owners of the said shares of stock are entitled, by repaying the amount of the money advanced to them as aforesaid, until the expiration of ten years after the date hereof; and that until default shall be made by the said *W. W.*, and *W. B. W.*, in the payment of any sum of money which can and shall be lawfully claimed and demanded of them, under the provisions of this deed, the said *W. W.*, and *W. B. W.*, and their heirs and assigns, shall and may have

the full and free use, occupation, control and enjoyment of the said theatre and lots of ground, with the appurtenances, subject only to the right of free admission of the said stockholders, and their assigns, as reserved in this indenture. And the said *William Gwynn, &c.,* for themselves, their heirs, executors and administrators, do hereby covenant, grant, promise and agree, to and with the said *W. W.*, and *W. B. W.*, their heirs and assigns, that on the payment of all sum and sums of money, due on account of the said shares of stock to the owners thereof, and also, all sum or sums of money that may be due and owing for work, labor or materials, in manner and form aforesaid, that then they, the said *William Gwynn, &c.*, and the survivor or survivors of them, or the heirs of such survivor, shall and will, on the reasonable request, and at the proper cost and charge in the law of them, the said *W. W.* and *W. B. W.*, their heirs or assigns, make, execute, acknowledge and deliver, or cause and procure to be made, executed, acknowledged and delivered, in due form of law, a good and sufficient deed or deeds, conveyance or conveyances, assurance or assurances, device or devices, in law, for the effectual conveying, releasing, and confirming unto them, the said *W. W.*, and *W. B. W.*, their heirs and assigns, forever, the said theatre, lots, &c., and that free and clear, and freely and clearly, acquitted, exonerated and discharged, of and from all, and all manner of claim of them, the said *William Gwynn, &c.*, their heirs, executors, administrators and assigns, or any other person or persons whatever, claiming or to claim, by form or under them, or any of them; or by or through their, or any of their means or procurement. In testimony whereof, &c."

A schedule of names, proprietors of one hundred and twenty-six shares, was appended to this deed.

On the 28th May 1839, a bill was filed by a number of the stock holders, against the trustees and managers, praying a sale of the theatre and lot on which it was erected, and after answers, a decree was passed for a sale.

On the 25th March 1842, *Sarah Brown* and others, administrators of *Stewart Brown*, filed their petition, alleging they had a large claim against the theatre, for materials furnished

by their intestate, for its erection and use, and being informed that a sale was delayed, by consent of parties, prayed that it might be peremptorily ordered to be made.

In 1843, *John Cross,* as surviving partner of *Andrew Cross* and *Stewart Brown,* of the firm of *A. & J. Cross & Company,* and the administrators of *Stewart Brown* and *Thomas Symington,* administrator of *William Stewart,* filed their petition, and after stating the previous proceedings in the cause, and the indenture of 1816, alleged, that they were claimants, whose claims were intended to be protected by the said deed of 1816, and the payment of which is secured, thereby, equally with the said stockholders, and that they are unable to obtain payment, except by a sale of the theatre. Prayer, for leave to take proof in support of their claim, and their right to demand a sale, &c.

In support of their claim, the petitioners, under the usual order of court, examined *Wm. Gwynn, Esq.,* one of the trustees in the deed of 1816, who proved, that the firm of *A. & J. Cross & Co.,* of which firm the late *Stewart Brown* was a member, did furnish lumber for the erection of the *Baltimore Theatre,* which was commenced in 1812; that he does not know what was the amount of their bill for the same, but that it was considerably more than $2000, and was so admitted by *Messrs. Warren* and *Wood,* the managers of said theatre, for whom deponent acted as agent. From a memorandum in deponent's possession, and herewith filed, marked exhibit O, the claim of *A. & J. Cross & Co.,* against said theatre, admitted by *Warren* and *Wood,* amounted, with interest on the 1st June 1815, to $2650. As agent of said *Warren* and *Wood,* deponent collected the subscriptions to the stock of said theatre, and paid the bills for them against the theatre.

That *William Stewart,* in his life time, furnished the stone work for the erection of said theatre, and that deponent, as agent of *Warren* and *Wood,* paid part of his claim against the theatre, and from said memorandum in his possession, (exhibit O,) the amount of his claim therefor, on the 1st June 1815, was $1051.28, without interest.

That he does not know the specific payments, but various payments were made by deponent on such claims, on the 1st May 1828; that deponent acting for *Wm. Warren*, had a settlement of the claim of *A. & J. Cross & Co.*, and there was found to be due upon the 1st November of that year, from said *Warren*, the sum of $1300, as appears from the promissory note of the said *Warren*, produced before deponent, and herewith filed, marked exhibit B; that the said promissory note is in deponent's handwriting, and was signed by *William Warren*, in deponent's presence, and on that occasion, the parties admitted the sum mentioned in said note to be the amount due.

That there was due upon the claim of *William Stewart* aforesaid, the sum of $850, on the first day of July 1826, as appears from the paper marked exhibit A, produced before deponent, and herewith filed; that said paper is in the body thereof, in the handwriting of deponent, and was signed by *William Warren*, in his own proper handwriting.

That at an early period, after the materials were furnished, by *A. & J. Cross & Co.*, and *William Stewart*, their claims were ascertained and acknowledged by *William Warren*, in the joint names of *Warren* and *Wood*, which certificates of acknowledgment were prepared by deponent, to certify the claims against said theatre.

That sometime about the year 1826, said *William B. Wood* sold out his interest in said theatre to *William Warren*, and it was made a condition of said purchase, as deponent knows from the parties, that said *Warren* should pay all the claims of persons holding such certificates against the theatre; and that he should get said claimants to accept the said *Warren's* individual liability and certificate, in lieu of the joint liability and certificate of *Warren* and *Wood*, that the only two claims then unpaid, which would come under the deed of trust, were the claims of said *A. & J. Cross & Co.*, and *William Stewart*, who agreed to accept the individual certificates of said *Warren*, upon the express condition, however, that they reserved their lien or claim under the deed of trust, which reservation and agreement is evidenced by a memorandum, appended to the claims of *A. & J. Cross & Co.*, marked exhibit C, and which

properly and truly represents the understanding and agreement of said claimants, and *Warren* and *Wood*, on the former receiving the individual certificates of *William Warren;* that upon receiving the individual certificates of *William Warren,* the joint certificates of *William Warren* and *Wood,* were delivered up.

That in regard to exhibit C, the handwriting of which, and of the initials thereto, deponent does not know.

That he is well acquainted with the handwriting of *William Warren* and *William B. Wood,* and that he has recently examined their answers in the chancery office, referred to in the interrogatory, and the signatures to said answers are in the handwriting of said *Warren* and *Wood,* respectively; and that the paper now produced to him, and mentioned in said interrogatory, as papers marked No. 1, was in his hand at the time he examined said answers, and is in deponent's opinion and belief, a true copy thereof.

On the 2nd December 1843, *William Gwynn, Esq.,* being cross-examined, on the part of *Mendez I. Cohen,* one of the stockholders in said theatre, upon certain interrogatories herewith filed, the said *Gwynn* further deposed and said as follows:

That the claims of *Cross & Co.,* and *Stewart,* were against *Warren* and *Wood,* as managers of the theatre, and are among the claims referred to in the deed of trust, from *Warren* and *Wood* to five trustees, of whom deponent was one; deponent has no knowledge of any legal steps having been taken, for the collection of said claims of *Warren* and *Wood,* otherwise than by proceedings in chancery, to sell the theatre property, which said *Warren* and *Wood* had mortgaged to five trustees, of which deponent was one. A bill was filed by *Cross & Co.,* and *Stewart,* praying such sale; no legal steps were taken against *Warren* and *Wood,* individually, for the collection of said claims.

That the theatre, if sold, would not produce within $5000 of the amount due the stockholders; deponent cannot tell the number of stockholders.

The exhibit O, referred to by the witness, contained a list of claims against the theatre. The note of *William Warren,* for $1300, dated 1st May 1828, payable six months after date, to *W. Gwynn,* as trustee, for value received, in materials for the said theatre, when first built; endorsed; *William Gwynn,* trustee.

Exhibit C. "I have received from *William Warren,* in lieu of this, from *Warren* and *Wood,* thereby consenting to make no claim on *William Wood* personally, for my account against the *Baltimore Theatre,* but on the express condition, that I still hold my claim and lien on the theatre and lot, under the mortgage to the trustees, as well as on said *William Warren.*

    *15th August* 1826.                                S. B."

Exhibit A, was the acknowledgment of *William Warren,* of 1st July 1826, of balance due to *William Stewart,* $850, for work and labor, and materials for the *Baltimore Theatre,* payable with interest, the payment, whereof, is secured by a mortgage of the said theatre to *W. G.* and others, in trust.

The objection raised in the Court of chancery to this deposition and exhibits, is particularly set forth in the opinion of this court.

The petition of the appellants was also answered by *Warren* and *Wood,* who admitted their claims, their origin and existence, and disclaimed all present interest in the theatre.

The Chancellor, (BLAND,) on the 15th January 1844, decreed as follows :

"Although it appears from the proofs, that the petitioners were at one time creditors, whose claims against the said managers was for work and labor, or materials, performed or furnished on the said theatre, yet, as they have now here produced no written acknowledgment thereof, signed by the said *William Warren* and *William B. Wood,* or by either of them, in their joint names, according to the terms of the said indenture, of the 11th October 1816, under which, alone, the said petitioners can have any standing here, in this suit, as creditors. It is therefore ordered, that the said petitions be dismissed, with costs."

From this decree, the petitioners appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By BROWN and BRUNE for the appellants, who contended:

1. Their claims being respectively for materials furnished for the theatre, and used in its erection, and having been, soon after such materials were furnished, acknowledged by a writing, signed by *William Warren,* in the joint names of himself and partner, *William B. Wood,* were embraced within the terms of the deed of trust, of the 11th of October 1816, and secured by its provisions, equally with the stockholders therein mentioned.

2. The subsequent surrender of these acknowledgments, and the substitution therefor of the acknowledgments signed by *William Warren,* in his individual name, under the agreement proved by *Mr. Gwynn,* did not release the rights of appellants, previously acquired, to participate in the security afforded by the deed of trust, nor impair the liens, which they then held to the property conveyed by said deed.

They cited : 2 *Sto. Eq.,* 521. 4 *Mad.,* 161. 1 *Collyer,* 409. *Clagett, et al., vs. Salmon,* 5 *G. & J.,* 351. *Duffy vs. Orr,* 1 *Clark & Fin.,* 253. *Kirby vs. Taylor,* 6 *John. C. R.,* 242. *Powell on Devises, Ch.* 35, 665. 22 *Law Lib.,* 355. *Catskill Bank vs. Messenger,* 9 *Cow.,* 37.

By GLENN for the appellees, who contended :

1st. That the petitioners, appellants, are not creditors coming within the terms of the deed of trust.

2nd. That they are to be postponed to the other creditors of the theatre.

3rd. That *W. Gwynn, Esq.,* is not a competent witness in the case.

4th. That the petitioners have discharged all claims against the fund, by a release of *Mr. Wood.*

5th. That the debt of petitioners, from lapse of time, is presumed to be paid.

On the 1st point he cited : *Pierpoint and Lord vs. Graham,* 4 *Was. C. C. Rep.,* 232. *Cheever, et al., vs. Clarke,* 7 *S.*

*&. R.*, 510. *Kirby vs. Taylor*, 6 *John. C. R.*, 242. *Shaw vs. Pratt*, 22 *Pick.*, 308, is against all the authorities.

On the 3rd point he cited : *Supervisors of Chenango vs. Birdsall*, 4 *Wend.*, 457. 10 *Wheat.*, 384, 385. *Greenleaf on Evid.*, 199, 398. *Hougham vs. Sandys*, 2 *Sim. & Stuart*, 221. 1 *Con. Eng. C. Rep.*, 427. *Fereday vs. Wightwick*, 4 *Russ. C. R.*, 114, 115. *Act of* 1832, *ch.* 302.

On the 4th point he cited : *Co. Litt.*, 212. *Esp. N. P.*, 281. *Steinman vs. Magnus*, 11 *East.*, 390.

CHAMBERS, J., delivered the opinion of this court.

The legal construction of the deed of trust, dated 11th October 1816, is one of the material points on which this cause must be decided, and many authorities have been cited to sustain the different views taken by the respective counsel. After a full consideration of these authorities, we have arrived at the conclusion, that the priority claimed by the appellees for the stock holders cannot be sustained.

It cannot, certainly, be successfully contended, that the origin and nature of their debt gave them stronger claims, in equity, upon the trust fund. The labor and materials furnished by the appellants, contributed to enhance the value of the trust property, which had been purchased with the funds advanced by the stockholders. The improvement of the city, and a desire to introduce theatrical amusements, doubtless operated, in some degree, as inducements for the subscriptions and advances of stockholders, who could not fail to consider the enterprize as one of some hazard. The appellants furnished their materials and labor in the ordinary routine of their respective business operations, and must be presumed to have had at least an equal claim, and it would seem, an equal expectation of payment.

Where it can be done without violating the plain and express terms of the instrument creating the trust, chancery will administer a trust fund which comes into its possession and control, so as to give an equal proportion to each creditor, which is considered but another mode of expressing its purpose to "do equal justice to all."

There are no such provisions in this deed as to require a departure from this rule.

The trusts of the deed are "to secure the stockholders the right of free admission to performances," "until *Warren* and *Wood* shall pay the stockholders, or their assigns, the full sum of two hundred dollars for each share subscribed;" "and in further trust, to secure the payment of all claims for labor or materials," &c.

Now it is remarkable, that there is not any where in the deed an express stipulation, to pay the two hundred dollars per share.

It is covenanted, that the stock holders shall not exact payment until the expiration of ten years, and that *Warren* and *Wood* shall not be permitted, for that period, to repay the advances of two hundred dollars per share, and thus terminate the right to free admission; and there are covenants securing the possession to *Warren* and *Wood* during those ten years, and binding the grantees to reconvey on payment of the money intended to be secured. All parts of the deed indicate the intention to secure the repayment of these advances, but there is no express covenant to pay. This omission seems to be scarcely consistent with the allegation, that the leading object of the deed was to secure a preference for these advances over claims for labor and materials.

It is true, this preference might be made without such express stipulation to pay, but certainly the absence of it is not calculated to impress the belief, that the preferred payment was very distinctly before the mind of those who prepared and executed the deed.

Reliance was placed on the circumstance, that the claims of the stockholders are first mentioned in the declaration of trust, and that the claims for labor and materials are provided for as "a further trust."

It was well answered, that where more than one claim or claims were provided for, it was necessary to mention them successively, and that the order of enumeration does not give preference. There seems to be no more evidence of intended priority by connecting the two classes, as here, by the words, "in further trust," than by more brief terms of conjunction. In trust to "pay A his debt, and B his debt"—"in trust to

pay A his debt, and in further trust to pay B his debt"—or "to pay A his debt, and also B his debt," are but different modes of expressing the trust to be for the payment of the two debts of A and B; and neither will, alone, entitle A to receive his claim to the exclusion of B, if the fund be insufficient to pay both.

It is objected, however, that the condition upon which, alone, the claims of the appellants were to be paid, has not been complied with, by producing the certificate of *Warren* and *Wood*, or of one, in their joint names.

There is no rule of equity which will afford relief to such a party failing to comply with an express condition, except its performance be prevented by fraud or fault of the adverse party, or by inability arising from unavoidable accident.

This doctrine is ably discussed in the case of *Bath and Montague, 3 Cases in Chancery, 55,* and is sustained by the authorities cited at bar.

But the matter for consideration here, is whether the condition has been, in point of fact, complied with; and this, it is said, is proved by the evidence of *William Gwynn.*

His competency, as a witness, therefore, was a point much debated. It is unnecessary to say what would have been the opinion of the court, if exceptions had been taken in the Chancery court, according to the directions of the act of 1832, ch. 302.

That act provides, that no point relating to the competency of witnesses, or the admissibility of evidence, shall be raised in this court, unless it shall plainly appear, by the record, that such point had been raised by exceptions filed in the cause in the Chancery court. It is, therefore, quite unimportant that objections can be stated, which, if properly urged, would show the witness incompetent, inasmuch as this court cannot consider or notice the point, unless the act has been pursued.

The material enquiry then, is, have exceptions been filed in this cause, in the Chancery court?

In relation to the alleged exceptions, we learn from the record, in the return of the justice of the peace before whom the testimony was taken, that he, the justice of the peace,

"returned, with the deposition, certain suggestions and protest, left with him by *Nathaniel Williams, Esq.*, to be filed in his own behalf, and in behalf of other trustees therein named."

In another part of the record, is a paper in the following words : "*Cohen* and others, vs. *Gwynn* and others. In Chancery. Under the order of court for the taking of testimony, the majority of the trustees make, before the justice, to be annexed to his return, the following suggestion and protest:

1st. They protest against all evidence to support any claim or claims which is or are unaccompanied by a written acknowledgement signed by *William Warren* and *William B. Wood*, or by one of them, in their joint names.

2nd. They protest against any evidence, unless it is adduced to prove the claim of the petitioners, and that they are creditors, secured by the deed of trust.

3rd. They protest against the evidence of *William Gwynn, Esq.*, as reserved by the Chancellor.

*Baltimore*, 27th November 1843."

By whom filed, or when, we only know by the information in the return of the justice. This is the paper, and the only one, which is claimed as the "exceptions filed in the Court of chancery."

Without stopping to ascertain, whether the language of this paper does really import an objection to the "competency of *William Gwynn*, as a witness, or to the admissibility of his evidence," or whether professing, as it does in the justice's return, to be intended for a case in which *Mr. Williams*, with others, was a trustee, it could apply to this case, in which *Mr. Williams* does not appear before the court in the character of a trustee, he having been a trustee only for the term of ten years, ending in 1836, as is expressly alleged in the bill, and stated in the joint answer of himself and others; the necessary enquiry is forced upon the court, whether it be such an "exception" as the act of 1832 contemplates? It is an universal rule of practice in chancery, that exceptions like other formal papers filed in the cause, must be signed by a solicitor of the court. If a bill is not thus signed, it may, in any stage of the cause, be taken off the files of the court. 2 *Mad. Ch.*, 167.

So of an answer. *Ib.*, 331. A plea must in like manner be signed. *Ib.*, 295. And so must an exception. *Ib.*, 346. The qualification made by the second rule of the Chancery court, does not affect this case.

This practice is as proper, as it is universal. Without it, every individual in the cause, whether complainant or defendant, might file in the court papers of any and every character, which caprice, prejudice, passion or malignity might suggest, and without responsibility; whereas, a solicitor who should violate the decorum or dignity of the court, could be dealt with summarily, according to the nature and magnitude of his breach of professional duty.

This paper is not only not signed by a solicitor in the cause, but it is not signed by any one.

Nor was it "filed in the Court of chancery," within the meaning of the act. Its object was to prevent surprise, by raising points here in relation to testimony not raised in the court below. It may very well occur, that in the haste of executing a commission, or an order to take testimony, objections to portions of it may be taken, which afterwards, on consideration, will be abandoned; or, as is frequently the case, evidence is taken without objection, which afterwards is considered inadmissible, thus showing that the taking, or omitting to take objection before the commissioner, is not a sure guide by which to know the points in relation to it, raised in the court below. This case illustrates this position:

The decree says, "it appears from the proofs, that the petitioners, the present appellants, were at one time creditors," &c., whereby, it appears, the Chancellor did act upon the testimony of *Gwynn*, as there was no other such proof in the cause.

In this way, objections suggested at the execution of the commission, and afterwards practically abandoned at the hearing, might be again relied upon in this court, in obvious violation of the design of the law.

The return by an officer, before whom depositions are taken, by consent or by order of court, that objections were furnished to him to be filed in the cause, is not "filing exceptions in the

court of chancery, in compliance with the act of 1832, ch. 302.''

It has been urged that here, by the terms of the order, ''all legal exceptions'' are expressly reserved.   This is not tenable ground.

The order, with this reservation, is passed *ex parte*, and as matter of course, on a proper application; and according to the *English* practice, and the former practice in *Maryland*, all objections were open at the hearing, and then was the proper time for making them, the exceptions being reserved, to be then considered.   2 *Ves. & Bea.*, 401, *Murray and Shadwell.*

If the order was absolute, to allow the defendant to be a witness, it might conclude the adverse party, but with the reservation, the evidence of a defendant thus taken, came before the court subject to all objections at the hearing below, or if not urged there, the objections might be stated in this court after appeal, as is now claimed.   But this is exactly what the act of 1832, intended to prevent, by denying to this court the authority to notice any such objection, unless the record makes it appear, that ''exceptions'' were filed, not before the commissioner, but ''in the Court of chancery.''

In 10 *G. & J.*, 414, *Jones and Hardesty*, one witness had been examined, without any notice to the adverse party, and another witness was a defendant in the cause, who had been examined under the commission, without any previous order; yet the court was prohibited from noticing these objections, which, but for the act of 1832, would have been conclusive.

*William Gwynn's* testimony, then, being in the case, does it prove a compliance with the terms of the deed?   It leaves no doubt of the fact, that at one time, the claims of the appellant were authenticated, as the deed required; but the certificates signed by *Warren & Wood*, were, at a subsequent period, surrendered on an agreement, to receive in lieu thereof the certificate and promise of *Warren* alone, the claimants ''consenting to make no claim on *Wm. Wood*, personally, but on the express condition, they should still hold their claim and lien, under the mortgage to the trustees.''   Now it has been conceded, that a strict compliance with such a condition, must

be proved by a party claiming under it. There is, however, no rule which authorises a court of equity, to add other or more rigid restrictions than those contained in the contract.

As in all other cases, the object and intent of the parties, as expressed in the instrument, should be ascertained, and such an interpretation given to the whole and each part as will best effect that intention.

The condition was apparently introduced to protect others having an interest in the integrity of the fund, against claims not properly chargeable against it. As *Warren & Wood* being partners, had authority, each, to use the names of both, it may be difficult to discover how that protection was increased, by requiring either to subscribe "in the name of both," rather than for himself alone. It is sufficient, however, that it does plainly and clearly so require, and when the claim was authenticated by the required signature, the claimant had an immediate and positive right, as a *cestui que trust* under the deed.

If afterwards the acknowledgment had been destroyed by accident, would it destroy the pre-existing right? If even lost by the claimant's negligence, could that fact put an end to such right? Certainly not, while it was admitted, either that he had before the deed, or afterwards, procured the acknowledgment as required.

It is not said the acknowledgment must be preserved, and be at all times ready to be produced with the claim; there is nothing in the object or meaning of the parties that requires an interpretation, such as these additional terms would give to their contract; and therefore, it is not requisite to prove any such additional fact.

It only remains then to be seen, whether the appellants have surrendered their rights, under the deed, by the surrender of the certificates of *Warren and Wood*, and by receiving the individual notes of *Warren*, with the express condition, that they should not thereby lose their claim and lien under the deed. None of the cases referred to on this branch of the case, are precisely similar in principle to this.

The debt was here due, originally, from *Warren and Wood*. They executed the deed of trust to the appellees, as trustees

for their creditors, of the very property, for the improvement and increased value of which, they became debtors to the appellants, and which, it appears by the recital in the deed, was at the commencement of the enterprise agreed to be conveyed to the trustees for the purposes mentioned. The property thereby, became legally and equitably bound for the payment of these claims, and the trustees could be compelled so to apply it. They had voluntarily assumed the liability, in respect to this property which had previously attached to *Warren* and *Wood*. When the joint notes, or acknowledgment of *Warren* and *Wood* were passed to the appellants, does not appear; nor is it, perhaps, at all important.

In fact, the original agreement, as recited in the deed, would seem to indicate, that the property in the hand of the trustees was to be regarded as the primary and principal fund.

It is said to have been pledged as the consideration for the subscriptions, and, of course, before the claims of the appellants arose; and the deed was the execution of that pledge. The acknowledgments were not required to be in terms which should make *Warren* and *Wood* personally liable, it was to be an evidence of debt against the trustees; against the fund. In this view of the case, the trustees representing the fund might well be considered as principals.

But it is not necessary to put the case on that ground. The authorities referred to, are sufficient to sustain the proposition, that where a creditor has a lien on a specific fund, an agreement "to make no claim" against one of two principals in the debt, "on the express condition, that he shall retain the lien, will not defeat his remedy against the fund."

There has been no such long continued silence, or laches, as to amount to presumptive payment. The facts in the case account for the delay; and show repeated efforts to enforce the claim.

The only other ground on which the appellees claim that the remedy has been lost, to wit, the order dismissing the bill filed by the appellees, cannot be sustained.

The bill was dismissed, not upon its merits, but under a rule further to proceed in the cause, and in such cases it is not ne-

cessary to qualify the order by saying, that it shall be without prejudice to the rights of complainants. *See Sto. Eq. Pl.* 611. *See* 793. 1 *Barbour's Ch. Pr.* 246. 2 *Ib.,* 200.

The court will sign a decree reversing the decree of the Chancellor and remanding the cause, to be proceeded on in the Chancery court according to the principles herein declared.

DECREE REVERSED AND CAUSE REMANDED.