## VIRGINIA W. MASON *vs.* DAVID G. MARTIN, LEWIS G. KEMP, and others.

Where a case is submitted on bill and answer without replication, the allega-
tions of the answer are to be taken as true.

A trustee cannot purchase for himself at his own sale, either directly or
indirectly, and if he does, the sale will be set aside on the proper and
reasonable application of the parties interested.

It matters not that the sale was made at public auction, *bona fide* and for a
fair price, if the trustee becomes interested in the purchase, the *cestui que
trust* is entitled to come in, *as of course*, and set aside the purchase and have
a resale, without showing actual injury, provided he does so within a
reasonable time.

If the trustee puts improvements upon the property purchased, he will be
allowed therefor upon the resale; in some cases the property will be put
up at the original price in addition to expenditures for improvements, and
if it will not bring more on the resale the purchase will be allowed to stand.

If the *cestui que trust* be under no disability, and with full knowledge of the
transaction lies by for an unreasonable time, or does not, in a reasonable
time after disability removed, seek to set the sale aside or treat the trustee
as a purchaser for his benefit, it will be considered as an acquiescence in
the sale, and the trustee will not be disturbed in his purchase.

The sale in this case was made in March 1847 under a deed of trust; and the
trustees, by their agent, purchased the property for their own use. Of
this sale the *cestui que trust* had no notice, and it does not appear when she
discovered that the agent bought the land for the trustees.    In September
1848, the agent sold the land to N., and, in September 1850, the *cestui que
trust* filed her bill to set the first sale aside.    HELD:

That this was not an unreasonable delay, and though the complainant may
have been present at the last sale and made an offer for the land, she
would not be bound as having thereby acquiesced in this sale unless she
was aware that the trustees had violated their duty in making the first sale.

The deed being upon record was notice to N. of all its requirements, and he,
having purchased from the trustees, who, in making the sale, failed to
comply with the requisitions of the deed, can stand in no better position
than his vendors; if they derived no title under the first sale they could
pass none to him unless by the express or implied assent of the *cestui que
trust*, or conduct amounting to acquiescence.

The deed contained a power of sale by the trustees, for the payment of any
balance that might be due them upon the acceptances, to secure which the
deed was executed, "upon oath made before any justice of the peace by
*both* of the trustees, or in case of the decease of either, by the survivor,"
as to the amount of the balance due.    HELD:

Mason *vs.* Martin and Kemp, *et al.*

That this was a condition precedent and must be strictly complied with; the oath of *one* of the trustees, while both are living, is not a sufficient compliance with this requisition of the deed.

Trustees who purchase at their own sale, and those claiming under them, take the property, subject to the equity of the *cestui que trust* to set the sale aside at his option, if he has not confirmed the transaction with a knowledge of the facts.

APPEAL from the Equity Side of Washington county court.

The bill in this case was filed by the appellant, on the 13th of September 1850, and seeks to set aside a sale of lands made by Martin and Kemp, two of the defendants, as trustees under a deed of trust, executed by her to them, on the 8th of December 1845. The bill states the execution of the deed and makes an exhibit of it. It then charges that the trustees, after pretending to comply with all the requisitions of the deed on their part, on the 2nd of March 1847, put up the land at public sale, and the same was struck off to one William B. McAttee, at the alleged price of $12 per acre; that McAttee was the acting agent of the trustees in respect to said deed, superintending the preparation of the sale, &c., and as such agent, bid in land at the price above, which the bill charges was inadequate and greatly below a fair value, and that the land, if fairly sold, would have brought more than enough to satisfy the amount provided for by the deed, and that by this fraudulent and unfair sale, complainant is greatly injured. That McAttee has since sold the land to one Isaac Nesbitt, who is now in possession, and who purchased with full knowledge of the fraudulent circumstances under which McAttee obtained the same. The prayer is that the sale to McAttee may be set aside, and the land resold under the direction of the court and the proceeds applied as directed by the deed, and the residue, if any, to complainant and for general relief. Martin, Kemp, McAttee and Nesbitt were made defendants.

The deed referred to in the bill recites, that "whereas, Martin and Kemp had agreed to accept the drafts of Abraham Barnes, to an amount not to exceed $4000 at any one time,

and to fall due within one year, upon condition that the grantor will secure them from loss on account thereof by the execution of this deed, which she has agreed to do, provided the acceptances are limited as to time and amount, as above stated." It then conveys to Martin and Kemp a tract of land therein described, containing two hundred and sixty-six acres *in trust*, that if any balance shall remain due to them on account of said acceptances at the end of one year, "then upon oath made before any justice of the peace of the State of Maryland by said David G. Martin and Lewis G. Kemp, or in case of the decease of either, by the survivor, or in case of the decease of both, by the executor or administrator, as the case may be, of such survivor," they or the survivor of them may sell the land at public sale for cash, upon giving four weeks' notice thereof by advertisement, &c., and satisfy the balance due them and the expenses of the sale, and pay the balance, if any, to the grantor. If Barnes paid the acceptance within the year, they were to reconvey the property to the grantor. This deed was duly recorded.

The answer of Martin admits the execution of the deed for the purposes set forth in its recitals, and after stating that at the end of a year from its date there was due them, (Martin and Kemp,) $4000 on account of their acceptances for said Barnes, avers, that on the 21st of December 1846, "one of said partners, in strict pursuance of the provisions of said deed, made oath," &c., to the amount of said indebtedness, and that they, in further compliance with the deed, offered the land at public sale, but not being able to obtain a satisfactory bid, they postponed the sale till the 2nd of March 1847, when it was again offered at public sale, but they could not obtain a higher bid than $10 per acre, which not being then deemed a full price, this defendant requested Wm. B. McAttee, who had great skill in selling lands in said county, "to bid it in for them, the said Martin and Kemp, at $12 per acre, which he did, and then proceed to sell the same for them at public or private sale, giving more favorable terms of payment, whereby it was hoped he might obtain a higher

price, and thus save them at least a portion of their apprehended loss." That this sale to McAttee amounted to $3192, but defendant was willing to give Barnes credit for any increased price which McAttee might thereafter obtain. That he has no personal knowledge of the subsequent proceedings by McAttee in selling the land, but he is informed and believes that McAttee made many ineffectual efforts to sell at private sale, but failed in getting any bid even at $10 per acre; and in September 1848, he offered it at public sale, and defendant is informed and believes that complainant had full knowledge of all said offers, and that on the morning of the sale by McAttee, she, by her agent, John Thomson Mason, Esq., offered him $10 per acre, but would give no more, declaring it was worth no more; that McAttee could not obtain a higher bid than $10.50 per acre, but on extending the time of the first payment, he prevailed upon Nesbitt to advance his bid to $11, at which price he sold the land to him, amounting to $2926. He denies all fraud, and avers that his only object was to obtain the highest possible price for the land, so as to save himself from loss, and excepting his regard for Nesbitt's interest, defendant would be willing that the property, if it has since increased in value, should be resold.

The answer of Kemp is to the same effect, and contains the same averment, that "one of the said partners" made oath to the balance due under the deed. The answer of McAttee admits, that Martin and Kemp requested him to bid in the land at $12 per acre, and resell it on their account to the best advantage, which he did. As to the sale made by him to Nesbitt, his answer is to the same effect as that of Martin, averring, that John Thomson Mason, the brother of complainant, and her legal adviser, on the morning of the sale, came to him and made the offer on behalf of the complainant, referred to in Martin's answer. That the sale to Nesbitt was fair and *bona fide;* that he has since paid the first and second payments of the purchase money, but retains the residue to await the result of this suit.

The answer of Nesbitt states, that he has no knowledge of

the arrangement between Barnes and the trustees, "further than they are set out in the deed of trust from complainant to said Martin and Kemp." He admits the sale to him by McAttee, on the 19th of September 1848, and that he has since paid two-thirds of the purchase money, but avers, that he had no knowledge of any private arrangements between McAttee and Martin and Kemp, or that McAttee had purchased the land as their agent, nor had he any knowledge or suspicion of any fraud or unfairness contemplated or intended by them, or either of them. He denies all fraud on his part, and states that if complainant had made known any desire to have the land at the price he gave, before he had made the first payment, he would cheerfully have given it up to her. He further states, that on the day of sale he told J. T. Mason, the brother and counsel of complainant, that if he wished to buy the land in for his sister, he, Nesbitt, would not bid against him, and after it had been struck off to him, he offered to said Mason that if the latter or the complainant would take the land, he would surrender it to them, which offer said Mason, after taking some time for reflection, and perhaps for consultation with complainant, declined to accept.

The cause was submitted on bill and answer, without a replication, and the court, (MARSHALL, A. J.) passed a decree dismissing the bill, from which the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Oliver Miller* for the appellant.

1st. This is a conventional trust, in which the trustees have an interest to pay their own debt. The only security to the grantor is the *oath* of the trustees, she being herself a mere surety. Now as to the sale by the trustees to McAttee, it is clearly void upon two grounds:—1st. The terms of the deed are not complied with as to the oath. It required the oath to be taken by *both.* No matter what the reason for the grantor may have been for putting this stipulation into the deed,

Mason *vs.* Martin and Kemp, *et al.*

it is *there,* and she may say as to the affidavit of *one* only of the trustees, "*in hæc fœdera non veni.*" It is clearly a condition precedent. 9 *Gill,* 288. 3 *Gill,* 257. 2nd. The trustees purchased at their own sale. This they cannot do,—no matter how fair and *bona fide* the sale may have been, the rule is unbending. 1 *Story's Eq.,* sec. 322. 2 *Johns. Ch. Rep.,* 252. 3 *H. & J.,* 410. 5 *H. & J.,* 147. 3 *G. & J.,* 163. These cases show that the strict rule applies to sales under decrees in chancery, where the court is the vendor, and will protect the interest of parties, *a fortiori,* should it apply to trustees under deeds in which they have an interest.

2nd. Nesbitt did not purchase at a resale under the deed, but from the trustees, as vendees under the first sale, and therefore purchased a void title. He admits in his answer notice of the deed of trust, and cannot therefore avail himself of the plea of a *bona fide* purchaser without notice. 2 *Gill,* 164, *Bell vs. Mong.* Again, he is bound by the admissions of those under whom he claims. 1 *Starkie on Ev.,* 333. *Gresley's Eq. Ev.,* 355. 1 *Greenlf. on Ev.,* sec. 178. He either treated with *McAttee* as a purchaser from, or as agent of, the trustees. If as purchaser, he can only claim the title McAttee sold, which was void; if as agent, then he had actual notice of the trust, and was bound to know that the deed gave no power to the trustees to delegate their authority, and to see that every stipulation of the deed had been complied with.

3rd. As to acquiescence: There is no allegation in the answers that the appellant had knowledge that the *trustees purchased* at the *first* sale, or that all the stipulations of the deed had not been complied with. Acquiescence must be with a *full knowledge* of all her rights. Though she might have acquiesced in the second sale, this does not make her acquiesce in the first, nor does this make the first sale valid. There must be full knowledge on the part of a party waiving a right. *Story on Bills,* sec. 320.

*J. Dixon Roman* for the appellees.

The averments of the answer are to be taken as true, the

17      v.4

case having been set down for hearing without a replication. 1 *G. & J.*, 503. 2 *H. & G.*, 301. 8 *G. & J.*, 170. *Alex. Ch. Pr.*, 115, 116. 3 *Bland*, 125, 407.

The complainant has no possible interest in the trust, the property being, in any event, greatly inadequate to pay the debt, and under such circumstances the appellees had the right to purchase it in, and thus, as far as possible, avoid loss to themselves, giving the complainant the benefit of the highest price that could be obtained. The general rule does not apply here,—the rule is that the trustee cannot sell for his own use,—here the object was to make the land sell for more. The trustees here are in fact the only parties interested, and they, therefore, are the only parties that can ask to set the sale aside. 3 *G. & J.*, 163.

But suppose the case to be within the rule, Nesbitt is a *bona fide* purchaser without notice. 1 *Story's Eq.*, *secs.* 409, 410. 2 *Spence's Eq.*, 194. 2 *Atk.*, 242. 2 *Vern.*, 384. 2 *Story's Eq.*, *sec.* 1502.

The bill does not allege any informality in the execution of the power. It does not aver that the affidavit was not made by both; this appears from the answers, and the bill should have been amended on this point if it was necessary. But suppose it were established by allegation and proof that the affidavit was insufficient, equity would aid the defective execution. 1 *Story's Eq.*, *secs.* 95, 169, 170.

*R. H. Alvey* for the appellant, in reply.

There are considerations which address themselves to the court in behalf of the appellant. She was merely a surety and not connected with the business between Barnes and Kemp, and all the terms of the deed looking to her protection must be complied with.

The bill refers to the deed and makes an exhibit of it, and it is therefore to be taken and considered, with all its recitals and conditions, as a part of the bill itself.

The bill alleges, that *after pretending to comply with all the requisitions made* necessary by the deed as conditions

precedent, the trustees exposed the land to public sale and purchased it themselves for their own use, by their agent, McAttee; and that afterwards McAttee sold to Nesbitt, who purchased with full knowledge of the facts and circumstances attending the transaction.

It is admitted in the answers of Martin and Kemp, and McAttee, that at the *first sale* the trustees, by McAttee, their agent, bid in and purchased the land for their own use and at their own risk for $12 per acre. This first sale was the one pretended to be made in pursuance of the deed, and is the only sale with which we have any thing to do, or which is material to the proceedings in this cause, because it must be readily perceived that any subsequent sale, by whomsoever made, could not have been made in pursuance of the deed, but must have been made upon the responsibility of the purchaser at the first sale. The circumstances, therefore, attending the sale to Nesbitt cannot be taken into consideration in determining upon the validity of the first sale. It is not pretended in the answers of any of the defendants that the complainant was present, either in person or by agent, at the first sale, or that she had knowledge of it or gave the least countenance to it, but the naked fact is admitted by them all, that the land was purchased by the trustees at their own sale, without the averment of any attendant circumstances by which they can justify their conduct in the view of a court of equity.

The question then is, is the first sale thus made such an one as a court of equity will ratify? It has been a uniform rule of long standing, established and rigidly observed for the purpose of preventing fraud and imposition from being practised by trustees upon the rights of *cestui que trusts*, that purchases made by trustees at their own sale shall never be sanctioned unless under very peculiar circumstances, such as do not exist in this case. This rule is observed, not because of the inequity that may be practised in a particular case, but because of its sound policy as applicable to all cases. And hence the books speak of it as a general rule, to be observed in all instances. Indeed my construction of the rule is, that

where it appears that a trustee purchased at his own sale, *a legal presumption of fraud arises*, which is not susceptible of being rebutted but by the single fact of assent or acquiescence of the *cestui que trust;* and in the absence of proof to show an express assent, or such long delay in making application to have the sale vacated, from which an acquiescence may be inferred, the sale, however free from actual fraud, or in whatever good faith made, by legal presumption is fraudulent and will be set aside.    That this is the proper deduction from the authorities of our own courts, will appear from the cases of *Dorsey vs. Dorsey*, 3 *H. & J.*, 410; *Richardson vs. Jones*, 3 *G. & J.*, 184; and *Davis vs. Simpson*, 5 *H. & J.*, 147, all of which are conclusive in support of the application here made to vacate the sales under this deed.    Independent of these strong cases in our own courts, it is laid down in a great number of the best authorities, that it matters not how innocent the purchase may be in a given case, the fact of the trustee purchasing at his own sale poisons the whole transaction—and that the *cestui que trust* is not bound to prove, nor is the court bound to decide, that the trustee has made a bargain advantageous to himself.    The object of the rule is to guard against uncertainty and hazard of abuse, and to remove the trustee from temptation; and it permits the *cestui que trust* to come in at his own option, and, without showing any essential injury, to insist upon the experiment of having another sale.    1 *Story's Eq.*, secs. 321, 322.    2 *Johns. Ch. Rep.*, 253.    5 *Metcalf*, 468.    9 *Paige*, 238, 650.    2 *Sugden on Vendors*, 887 to 896, *and the notes to the new edition.*

The decree of the court below is expressly predicated upon the supposition, that there is no actual fraud in the case— that by the averments in the answers, all imputations of fraud are dissipated; but it will be seen by the authorities cited, that the right to vacate the sale by no means depends upon the existence of actual fraud.

Nesbitt denies knowledge of the fraudulent circumstances attending the first sale.    But then it must be conceded that

he was bound to inquire into the title, and that he purchased at his own risk; and if there be fatal defects growing out of the conduct of those from whom he purchased and under whom he claims, he must bear the consequences, whatever they may be.

Apart from this, however, he is bound by the admissions made by Martin and Kemp in their answers, being the parties under whom he claims. 1 *Starkie Ev.*, 285. 1 *Greenlf. Ev.*, sec. 178. 16 *East*, 334. 6 *Cranch*, 24. He had knowledge of the deed of trust, and he takes the land with all the infirmities attending the title of Martin and Kemp.

2nd. But the fact of the trustees purchasing at their own sale is not the only cause of setting aside their proceedings.

The deed, which is a part of the bill and which is admitted by all the defendants, makes it necessary, as a condition precedent, that *both Martin and Kemp*, or in the event of the death of either, that the survivor, or the executor or administrator of the survivor, should make oath to the statement of the amount actually due from Barnes, before they could proceed to make sale under the deed. But this was not done, for it is expressly admitted in the answers of both Martin and Kemp, *that one of them only made the affidavit.* This being a condition precedent, it must be shown that it has been fully and literally complied with before any proceedings can be legally taken to effect a sale in pursuance of the power in the deed.

If the court should be of opinion that there is any defect in the bill susceptible of amendment and necessary to accomplish its purposes, the cause will be remanded under the act of 1832, ch. 302.

TUCK, J., delivered the opinion of this court.

On the 8th of December 1845, the complainant executed a deed of trust to Martin and Kemp, two of the defendants, to indemnify them against loss on account of certain acceptances for the accommodation of Abram Barnes. The deed contained a power of sale, by the trustees, for the payment of any

balance that might be due, " upon oath made before any jus-
tice of the peace of the State of Maryland, by said David G.
Martin and Lewis G. Kemp, or in case of the decease of either,
by the survivor, or in case of the decease of both, by the exe-
cutor or administrator, as the case may be, of such survivor."
Afterwards there being a large balance claimed by Martin and
Kemp, one of them made the required affidavit, and the pro-
perty was advertised and bought by McAttee, for the trustees,
as their agent, to be resold on their account.    At the resale it
was purchased by the defendant Nesbitt.    The bill is filed to
vacate these sales.    The case having been submitted on bill
and answers, without replication, we are to consider the allega-
tions contained in the answers as true.    *Story's Eq. Pl., sec.*
887.    12 *Gill and Johns.*, 271.

It is well settled that a trustee cannot purchase for himself,
at his own sale, directly or indirectly.    The policy of the law
forbids it.    And if he does the sale will be set' aside on the
proper and reasonable application of the parties interested.
This is established on the soundest principles of equity, to re-
move all temptation from the trustee to promote his own interest
by violating the trust.    3  *Gill and Johns.*, 184.    4 *G. & J.*,
379.    But while this principle is conceded, on the part of the
appellee it is insisted that the present appellant has no real in-
terest in having the property again put in the market, because
it will not sell for enough to pay the claim of Martin and Kemp;
and under such circumstances, it is said, that the trustees had
a right to purchase the property in order to save themselves
from loss, giving the appellant the benefit of the resale.

It does not appear that the sale to McAttee was made on ac-
count of Martin and Kemp, as trustees, in order that a resale,
on more reasonable terms, might be made for the benefit of
the *cestui que trust*.    On the contrary, he was authorised to
buy the property, as the agent of Martin and Kemp, and to
resell it on their account.    It is true, they say in their answers
that they intended to give Barnes the benefit of any profits on
the resale, but this does not affect the complainant's right to
question the validity of the original sale.    This subject was
very fully discussed by Chancellor Kent, in the case of *Davoue*

*vs. Fanning*, 2 *Johns. Ch. Rep.*, 252. Similar arguments were there urged in support of the sale—that it was made at public auction, *bona fide*, and for a fair price,—but the court said the case came clearly within the spirit of the principle, that if a trustee, acting for others (and there he was acting for his wife as one of the *cestui que trusts*, as Martin and Kemp were interested here) sells an estate and becomes himself interested in the purchase, the *cestui que trust* is entitled to come in, *as of course*, and set aside that purchase, and have the property re-exposed to sale, without showing actual injury, if he chooses to say, in any reasonable time, that he is not satisfied with the first sale. It is no hardship on the trustee to hold that he alone shall not buy. It is part of his contract that in accepting the trust for the benefit of others he will not act for his own advantage—and, besides, if he has an interest in becoming the purchaser he may do so by fairly dissolving his relation with those interested in the property. But, as strictly as courts of equity have enforced this principle for the protection of *cestui que trusts*, the security of the trustee making the purchase has not been overlooked. The property in some cases will be put up at the original price in addition to expenditures for improvements, and if it will not bring more on the resale, the purchase will stand—the trustee in the event of a resale being allowed for the improvements. The question in all its bearings, and the cases are so fully examined in the case to which we have referred, that it is unnecessary here to cite other authorities.

But it is insisted that this sale should not be disturbed because the agent and attorney of the appellant was present at the sale, and that her acquiescence may be inferred. It is true that the rule that a trustee cannot buy at his own sale is to be taken with some exceptions, " as if the *cestui que trust* be of full age at the time of the sale, and under no disability, and, with a full knowledge of the transaction lies by for an unreasonable time, or, being under age, or other disability, does not in a reasonable time after coming of age or the disability is removed, seek to set aside the sale, or treat the trustee as a purchaser for his benefit, it will be considered as an acquiescence in the sale, and the trustee will not be disturbed in his purchase." 4 *G.*

& J., 379. We are then to inquire whether there was any acquiescence or unreasonable delay on the part of the complainant in filing her bill? The sale to McAttee, as agent of the trustees, was made in March 1847. It does not appear that the complainant had any notice of that sale, or at what time she discovered that he had bought the land for the trustees. McAttee as agent for Martin and Kemp, sold to Nesbitt in September 1848. The bill was filed in September 1850. If we assume that the complainant, by her agent, was present at the last sale, and made an offer for the land, she would not be bound, as having thereby acquiesced in the sale to Nesbitt, unless she was then aware that the trustees had violated their duty in making the first sale, under which the title was to pass. She must have had a full knowledge of the transaction. There are two grounds of objection to this sale—that one only of the creditors made the affidavit of the balance due, and that the trustees bought at their own sale. As to the first objection she was certainly in no default, as far as we can gather from the record. The present is not unlike the case of *Webb vs. Mong*, 2 *Gill*, 163, where eighteen years had elapsed from the sale to the filing of the bill. Applying the reasoning of the court in that case to the one before us, it would appear to have been an ordinary sale to McAttee and by him to Nesbitt; and it seems only to have been discovered, from the answers, that the terms of the deed had not been complied with, as to the manner of proving the claim against Barnes. In that case the complainant attended the sale and was requested to bid, and declined, but did not express any dissatisfaction therewith. It did not appear that he then or at any subsequent time, until the commencement of the suit, had any notice or knowledge that Boyd was purchasing for the trustees. Supposing the complainant was, by her agent, present at the sale to Nesbitt, and made an offer for the land, it does not appear that she or her agent had any knowledge that McAttee had purchased for the trustees, or that there was any defect in the affidavit. Questions of this kind must depend on the particular circumstances of each case. In the absence of further information we cannot say that there was unreasonable delay. The

counsel for the appellees contends that the affidavit of one of the creditors was sufficient. We do not think so. The complainant was about to convey this land as security for advances to be made for a third person, with whose business she does not appear to have had any connection or interest. Relying upon Martin, and Kemp and Barnes, the only guarantee she required was the oath of both the creditors that the balance they might thereafter seek to recover against the land, was actually due. The deed appears to have been drawn with reference to this mode of proof, and being a condition precedent to a sale, we are of opinion that it should have been performed. In the case of *Cross vs. Cohen,* 3 *Gill,* 257, it was provided, in a deed of trust, that certain claims should be paid upon the certificate of Warren and Wood, or one of them. The court held this to be a condition precedent to be strictly complied with (269, 272.) We can perceive no difference in principle between the two cases.

An affirmance of the decree is claimed by Nesbitt, as a *bona fide* purchaser, without notice. The deed of trust being upon record, was notice to him that a sale could not be made without the affidavit of both the creditors; indeed his answer admits that he had knowledge of the arrangements between the parties as far as they are set forth in the deed of trust. But he denies any knowledge of the arrangements under which McAttee purchased the land. Under the circumstances of this case we do not think that he can claim to be in any better position than his vendors, Martin and Kemp. If they derived no title under the first sale they could pass none to Nesbitt, unless by the express or implied assent of the *cestui que trust,* or conduct amounting to acquiescence. It is not apparent that Nesbitt will likely be injured by a resale. He has paid part of the purchase money, but it is not averred that the property has been enhanced in value by improvements; yet, if this be so, he should have an opportunity of showing his expenditures. It may be that the proceeding will not result in any advantage to the complainant. If this be so we cannot look to it. Trustees who purchase at their own sales, and those claiming under them, take the property subject to this equity of the

18      v.4

*ccstui que trust*—the right of setting the sale aside, at his option, if he has not confirmed the transaction with a knowledge of the facts. *Adam's Equity, ch. 5.* 68 *Law Lib.*, 168, 169. But she has an interest in the amount of sales, because that is to be the standard of her recovery against Barnes. If the land is sacrificed without the fault of Barnes, and she submits, she cannot claim more against him ; and, so, if it sells for its full value and she recovers that sum against him, she will be fully indemnified for her suretyship. A *resale should* be made according to *Davoue vs. Fanning*, 2 *Johns. Ch. Rep.*, 271, for which purpose, and for taking an account of the expenditures and improvements, if any, the cause will be remanded ; and as this controversy has grown out of the unauthorised acts of Martin and Kemp, the costs will be decreed against them.

*Decree reversed with costs, and cause remanded.*