Connecticut Mutual Life Ins. Co. v. Stinson.

thereof. By an order of court subsequently entered the receiver was directed to continue the business of said Standard Eggette Coal Company, which he proceeded to do; in pursuance of said order of court, and while proceeding to continue the business of said coal company, said receiver retained possession of the premises upon which was conducted the business of said coal company, and incurred certain indebtedness and paid out moneys in furtherance thereof.

Breckenridge & Rich, attorneys for appellant.

H. S. & F. S. Osborne, and R. F. Pettibone, attorneys for appellees.

---

**Connecticut Mutual Life Ins. Co. et al. v. James Stinson et al.**

1. Mortgagor and Mortgagee—*Acquisition of Tax Titles.*—Neither a mortgagor nor a mortgagee can, as against the other, acquire a tax title to the property covered by the mortgage, and purchases of tax cer-

tificates upon the mortgaged property by the mortgagee are necessarily in trust for the mortgagor.

2. TRUSTEES—*Purchases of Property Held in Trust.*—When a trustee has made an improper purchase of property of his *cestui que trust* the latter may, if he wishes, insist upon a reconveyance from the trustee, if it remains in his hands unsold; but a reconveyance will only be decreed upon the terms of his paying the purchase money, with interest, and all sums that have been expended having a tendency to bring the estate to a better sale.

3. SAME—*Purchases, When Objected to by the Cestui Que Trust—Remedy.*—When the *cesiui que trust* objects to a purchase by his trustee, the trustee is not to be called upon to make up the difference between what he paid and what was the true or probable value at the time; the ordinary relief consists in ordering a resale of the property upon such terms as fully secure to the trustee all that he has expended.

4. TAX SALES—*Of One-vigintillionth Part—Rights of Purchasers Under.*—While the one-vigintillionth part off the front end of a lot is so, minute as to be unappreciable by the physical senses, nevertheless the mind recognizes it as a real entity, and a title obtained to it by a deed under a tax sale would cut the owner off from access to the street, and render him guilty of a technical trespass whenever he passed over it.

5. SAME—*Of One-vigintillionth Part a Cloud upon the Title.*—A sale of one-vigintillionth part off of the east side of a tract of land is regarded in Cook county as a cloud upon the title, and is an obstacle in the way of negotiating a loan or closing a sale.

6. REDEMPTION—*From Tax Sales—Must Comply with the Statute.*—Where a person assumed to redeem from a tax sale by depositing with the county clerk, a year after the sale was made, the amount for which the premises were sold, and not the sum required by the statute to effect a redemption, *it was held* that such attempted redemption was not, under the statute, any redemption at all.

7. TENDER—*When Not Sufficient in Foreclosure Proceedings.*—A defendant in a foreclosure proceeding upon premises of which the one-vigintillionth part off from the east side had been sold for taxes, and redeemed by the mortgagee, tendered an amount sufficient to pay the mortgage debt and costs, etc., but not sufficient to cover redemption from the tax sale; *it was held* that the tender was insufficient.

**Mortgage Foreclosure.**—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1895. Reversed and remanded, with directions. Opinion filed February 10, 1896.

### STATEMENT OF THE CASE.

This is an appeal by the complainants below from a decree on a bill to foreclose a mortgage on real estate. On

March 9, 1881, the appellee James Stinson borrowed of appellant insurance company $15,000, giving as security a mortgage bond and trust deed on the real estate described in the bill. Interest was regularly paid on this debt, the last installment being paid on September 12, 1893, and no interest was due at the time of filing the bill to foreclose.

The ground alleged for electing to foreclose was the omission of Stinson to pay certain taxes and special assessments, payable in 1893, and the consequent sale of the property to pay the same on November 4th and 14th, respectively, of that year. Out of these sales and a similar sale of the same property in 1894, arise all the matters in dispute between the parties here.

Mr. Sartell Prentice, agent for the insurance company, made repeated and peremptory demands on Stinson to redeem from these sales. His only reply was, "Expect in a short time to be able to attend to the matter referred to."

On December 9, 1893, when the certificates were about one month old, the company purchased them of the holder, William Mills, who, it appears, was an agent for D. G. Hamilton, a tax buyer, paying their face, and twenty-five per cent additional. The assignment by Mills was by blank indorsement. The bill to foreclose was filed December 26, 1893; it does not allege that any advances have been made for any purpose, but prays that such advances as the company may make or may have made, may be allowed it on accounting.

Stinson filed answer and cross-bill, in which cross-bill he set up that these certificates were assumed to be purchased by the company, under its authority in the mortgage deed, and were only payments, and hence the company should not be allowed the amount of the face with interest.

In said cross-bill appellee prayed "that said insurance company and said Mills may be required to deliver up said certificates of tax sales to be canceled; that an accounting be taken, and upon the allowance to said company of such sums for taxes and special assessments paid by it as it was equitably entitled and authorized to pay and to recover of

this defendant under said mortgage deed, and to protect said mortgage indebtedness and legal interest thereon, that said premises may be freed from the pretended lien of said tax sales, and for other and further relief."

As a part of the final decree, the cross-bill of appellee was, on motion of Stinson, dismissed without objection, by complainant.

The case was referred to the master in due course, and as part of the complainant's evidence, the tax sale certificates of 1893 were introduced, accompanied by testimony that the company had paid their face and the twenty-five per cent additional for them on December 9, 1893, and such amount, with interest thereon at eight per cent per annum from date, was claimed.

Appellee objected to this evidence on the ground that the trust deed gave no authority to purchase and hold tax certificates, but only to pay taxes or redeem from tax sales, and that the purchasing and holding tax certificates did not in any sense protect the security or remove clouds from the title.

Subsequently, as part of defendant's testimony, certificates of the payment of certain sums as a redemption from these two sales issued by the county clerk to Stinson were introduced in evidence, and accompanying them a certified copy of the tax judgment, sale and redemption record for the sales of 1894, showing that of the property mortgaged, the east one-vigintillionth thereof had been sold to William Mills, October 24, 1894.

Subsequently it came to the knowledge of the solicitor for Stinson that the company contemplated buying this vigintillionth certificate, and asking to be allowed for it, like the former ones. Notice was at once served on the company's solicitor and agent that such purchase would be at their peril, and stating the grounds of objection to its allowance. Notwithstanding this warning, the company purchased this certificate, which, like the others, was indorsed in blank by William Mills, and introduced it with evidence that it had paid the face, and the twenty-five per cent for

it, and claimed the amount paid with eight per cent penalty per annum interest from the date of payment.

Appellee objected to the admission of this evidence on the same ground as in the former case, and on the additional ground that a " vigintillionth " sale could not endanger the security or cloud the title of the property within the terms of the trust deed.

At the close of the hearings before the master, the solicitor of Stinson made a tender to complainant's solicitor of $16,972.75, saying, " this tender is made in full of all money due under the mortgage and the mortgage bond, court costs and attorney's fees, as provided in said mortgage, meaning hereby to tender all money due, or which the defendant, James Stinson, is bound to pay under the bill and proofs in this cause, to this date." To which the solicitor for the complainant replied: " The Connecticut Mutual Life Insurance Company declines to receive this amount with the condition or proviso attached to the tender, to wit: ' That it is made in full of all money due under the mortgage and the mortgage bond, court costs and attorney's fees, as provided in said mortgage, meaning hereby to tender all money due, or which the defendant James Stinson is bound to pay under the bill and proofs in this cause, to this date.' "

"And the Connecticut Mutual Life Insurance Company, by its counsel, hereby offers to receive the sum tendered and apply the same on account of the mortgage indebtedness which is in question in these proceedings."

The decree of the court below was in part as follows:

"Finds that the exceptions of James Stinson to the master's report, so far as they relate to the amounts allowed for money and interest paid for tax sale certificates, No. 3,246 and No. 6,745 of the year 1893, and as relating to the amount allowed for money paid for the tax sale certificate of 1894, No. 2,101, for the east one-vigintillionth of said premises, are well taken, and are sustained, as also exceptions relating to sufficiency of the tender of the sum, $16,972.75 made by defendant, Stinson, to complainant, insurance

company, December 6, 1894. Finds that said amount so tendered was the whole amount due said complainant at said date for its principal debt, interest, court and master's costs paid and accrued, solicitor's fees and disbursement, and that on account of complainant's refusal to accept said money so tendered, it is adjudged to pay all court costs and the master's fees accrued herein since said date. But finds that said tender was not kept good by payment into court, and that because of such failure said tender did not stop the running of interest of said principal indebtedness, and Stinson is adjudged to pay interest at eight per cent per annum on said principal indebtedness of $15,000, from December 6, 1894, to the date of this decree, such interest amounting to $636.60.

Ordered that said insurance company be at liberty to withdraw said certificates of tax sales from the files of this court, without prejudice to a writ of error or appeal, and on motion of defendant, James Stinson, ordered that cross-bill filed by him be dismissed.

Finds that all material allegations of complainant's bill of complaint are true, and that there is due the complainant insurance company for the principal and interest on the mortgage debt and costs paid and accrued up to December 6, 1894, and its reasonable attorney's fees, the sum of $19,609.25, being the amount tendered to said complainant by said Stinson on December 6, 1894, and interest on said principal debt up to date of decree, and finds that by leave of court said defendant, James Stinson, paid into court on May 29, 1895, said sum of $16,972.75, tendered as aforesaid, to get the benefit of said tender, and said sum is now on deposit in this court, but finds that said sum so paid into court was not a sufficient tender at the time it was so paid; thereupon, said James Stinson, for the purpose of preventing a decree of sale, moves for leave to pay into court said additional sum of $636.60 upon the express condition that if complainants, or any of them, prosecute an appeal or writ of error from this decree, that said payment of said additional sum shall not be considered voluntary on the part of

said defendant so as to estop him from assigning for cross-error the holding of the court that said additional amount is due the complainant. Said motion granted, and thereupon said James Stinson deposits in court said sum of $636.60.

Further adjudged that the amount of $17,609.35, now on deposit in this court to pay the amount found due by this decree is the full amount due from said defendant, James Stinson, to said complainant, Connecticut Mutual Life Insurance Company, and said complainant is hereby given leave, and ordered and decreed to receive said amount from the clerk of this court in full satisfaction of all claims against said defendant arising by reason of said mortgage and this proceeding.

Prayer of complainant for decree of foreclosure denied, and right of complainant to any decree for costs denied.

Finds that mortgage debt has been fully paid and satisfied, and orders that said premises (describing them) be, and the same are hereby freed and disincumbered of the lien of said trust deed and mortgage bond.

The motion of complainant, the insurance company, to be allowed to receive from the clerk, without prejudice to a writ of error or appeal herein, the said sum of $16,972.75, deposited as aforesaid, is considered and overruled. Thereupon complainants prayed an appeal to the Appellate Court."

E. PARMALEE PRENTICE, attorney for appellants.

ENOCH J. PRICE, attorney for appellees.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

In reference to the right of appellant to recover the amount paid by it for tax certificates, the question is not, as argued by appellee, what are the rights of one who at a tax sale buys one vigintillionth off the east part of a lot, but what the rights of appellant as a mortgagee under the mortgage deed given by appellee were.

Neither a mortgagor nor mortgagee can, as against the right of the other, acquire a tax title to the property covered by a mortgage. Whatever purchases of tax certificates upon the property mortgaged or any part thereof were made by appellant were necessarily in trust for appellee and could be used only for the purpose of protecting the lien which appellant had upon the property of appellee to secure his indebtedness to it. The mortgage deed executed by appellee for the benefit of appellant, after providing for the payment of the notes given by appellee, and for keeping the premises insured, etc., contains a promise and covenant by appellee that "until full payment has been made by him as aforesaid, he will pay all taxes, assessments, rates and other charges upon the premises, and remove all adverse claims, cloud and incumbrances thereon, also, at once repay all advances made for insurance, taxes, assessments, rates, redemption from sales for taxes or assessments, or in any other wise to protect the security thereby given, with interest thereon until paid at the rate of eight per cent per annum, and also that until full payment of the moneys secured, nothing shall be done or suffered whereby the said premises shall be diminished in value."

In and by said mortgage deed appellee authorizes and empowers any attorney of any court of record to enter his appearance upon the filing of any bill for a foreclosure of said mortgage, and to file an answer for him and in his name, confessing the same and stating the amount that may then be owing on the bond executed by appellee, which said mortgage is given to secure for costs, taxes, insurance, attorneys' fees and other money expended under the provisions contained in said mortgage. Appellee in and by said mortgage also covenants that "the said premises, and every part thereof, in the quiet and peaceable possession of the party of the second part, or the survivor of him or them, and their and his successors in trust and assigns, against the claims of all and every person whatsoever lawfully claiming or to claim the same, he shall and will forever warrant and defend."

In said mortgage deed, appellee also covenants that "in the event that any suit shall be brought at law or equity for foreclosure hereof, any moneys so expended for any of the purposes hereinabove mentioned, at any time anterior to the entry of the decree in such suit, and whether paid after the commencement of such suit or not, may, with interest thereon as above provided, be included in the decree to be entered in the said suit, and shall, equally with the principal sum herein mentioned, be secured and recovered by said decree and by said instrument."

It was unmistakably the duty of appellee to pay the taxes and assessments legally levied or imposed upon said premises, as it was the right of appellant to pay the same, or to remove the same whenever they became a charge upon said premises, or a cloud upon the title thereof. Under the terms of trust of the said mortgage deed, it was the duty of said appellee whenever any such payments for such purposes were made by appellant, to repay the same at once, together with interest thereon, at the rate of eight per cent per annum.

It is with reference to the relation existing between appellant and appellee as mortgagor and mortgagee, the promise and undertaking, as well as the duty of appellee in the premises, and the rights of appellant growing out of the same, that we are to determine whether appellant is entitled to be repaid the amount by it disbursed for tax certificates upon the mortgaged property, together with interest thereon, according to the terms of the mortgage deed. It is urged that appellant was anxious to take up these certificates in order that it might receive eight per cent interest thereon. We find nothing justifying such contention. Appellant waited for appellee to pay these taxes and assessments, as it was his duty to do, and not until after the property had been sold at a tax sale for the aggregate amount of $2,814.81, and not until after appellant had most urgently and repeatedly called upon appellee to remove such cloud and lien did it exercise its right to remove the same.

There is nothing whatever tending to show that in purchasing any of the tax certificates appellant acted otherwise than in the utmost good faith for the protection of its lien, and for the purpose of removing charges upon the property of appellee.

It is urged that Mr. Hamilton, who purchased at the tax sale, and to whom the tax certificates were issued in so purchasing, was an agent of appellant and held such certificates for its use and benefit, because of the arrangement which appellant had with him, that it would take off his hands tax certificates obtained by him upon property upon which appellant had liens, paying him the amounts the said Hamilton paid therefor, together with the statutory penalty thereon. Granting that said Hamilton was, by this arrangement, made the agent of appellant, and we do not see that the case is materially altered. There is nothing tending to show that said Hamilton in any way or wise was the agent of appellant to obtain tax certificates upon this property, to be held in any way hostile to the interests of appellee, or to prevent appellee from paying before sale such taxes and assessments, or himself purchasing at such sales; the utmost extent of the agency of said Hamilton was that he was not to permit any one to obtain tax certificates upon the mortgaged property, so that they could be held hostile to the interests of appellant. Such arrangement was in no way prejudicial to any right or interest of appellee. It was the duty of appellee to pay such taxes and assessments, and he had a right to do this up to the very moment of sale, as after sale he had a right to redeem the property therefrom by paying the amount of such sale, together with the statutory penalty thereon, being the sum which appellant paid Hamilton for such certificates.

Nor is there anything tending to show that appellee has suffered any loss or inconvenience because of any arrangement made between appellant and said Hamilton, or anything that said Hamilton did in the way of obtaining such tax certificates, or anything to show that if no such arrangement had been made, appellee could have removed the

lien and cloud of the taxes and assessments and sales from his property upon any more advantageous terms than those obtained by appellant.   For aught that appears, but for the arrangement between appellant and said Hamilton, not the one vigintillionth of appellee's property would have been sold at tax sales, but the entire premises, and for anything that appears, instead of the penalty arising upon such sale being, by the taking up of such certificates by appellant, limited to twenty-five per cent, it would have gone on and become after the end of six months, a penalty of fifty per cent, and after the end of one year seventy-five per cent, in accordance with the statute of this State.

It must be borne in mind that in respect to the payment of these taxes and assessments, and the taking up of any certificate of sale therefor made, a duty rested upon appellee, while appellant was under no obligation and had a right.   Under these circumstances it is inequitable that appellee should have removed from his premises a lien and cloud thereon, which by his negligence and failure to fulfill his promise, he suffered to remain, without being required to pay the entire sum which appellant disbursed to remove such cloud and lien, together with interest, as provided and promised by appellee in the mortgage deed by him made.

Where a trustee has made an improper purchase of property of his *cestui que trust*, the latter can, if he wish, insist upon a reconveyance from the trustee, if it remains in his hands unsold, but a conveyance will only be decreed upon the terms of his repaying the purchase money with interest, and all sums that have been expended that have a tendency to bring the estate to a better sale.   Pitt v. Mackreth, 1 White & Tudor's Leading Cases Equity, 235; Ex parte Hughes, 6 Vesey, 624; Hall v. Hallet, 1 Cox, 134.

" When a *cestui que trust* objects to a purchase by a trustee the trustee is not to be called upon to make up the difference between what he paid and what was the true or probable value at the time ;   the ordinary relief consists in ordering a re-sale upon such terms as fully secure to the trustee all that he has expended."   Pitt v. Mackreth, 1 White & Tudor's

Leading Cases in Equity, 259; Mason v. Martin, 4 Md. 124. About a year after the first two sales for taxes appellee assumed to make redemptions from such sales by depositing with the county clerk, not the amount required by the statute to effect redemption, but merely the amount for which such premises were sold at such sales. It would be most inequitable to allow appellee the benefit of such redemptions as against appellant, who, to remove the cloud of the tax sales, paid in good faith a much larger sum. Such attempted redemptions were not, nor was either of them, under the statute, any redemption at all.

It is urged that the sale of one vigintillionth of the mortgaged premises was equivalent to a sale of nothing at all; because the amount was so small as to be utterly unappreciable to the senses when aided by the most powerful instruments. The question in this regard is not whether an action of ejectment could be maintained by one obtaining a deed under such tax sale; quite likely, as is urged, it could not be, because no officer could deliver so minute a portion. While the portion sold is so minute as to be unappreciable by the physical senses, nevertheless the mind recognizes it as a real entity, and it is manifest that under a title obtained to this minute portion, appellee would be cut off from access to the street lying east of his premises; and would be guilty of a technical trespass whenever he passed over the premises which another party, under and in pursuance of such sale, had acquired. And in condemnation proceedings instituted for the purpose of obtaining access from the east into the mortgaged premises, the holder of a deed obtained under such sale would be a necessary party, and would have rights which the court would protect. The Supreme Court of this State, in the case of Roby v. City of Chicago, 48 Ill. 130, said:

"It matters not how minute the fraction sold may be, though only the millionth part of the entire lot, as was the case here in regard to one lot, the city, by selling that fraction, has recognized it as a distinct and divisible portion of the whole lot, and has received the purchaser's money

therefor, and it would be the most flagrant injustice to permit it, having done all this, to turn around the next year upon the purchaser and refuse him the poor privilege of paying taxes on property itself has sold, when such payment is the mode designated by the law for perfecting his title. If the city sells to him a strip off the east side of a lot, and gives him a certificate therefor which will entitle him to a deed at the end of two years, if he pays all the taxes assessed thereon in the meantime, shall the city be permitted to deprive him of the benefit of its own sale by saying that it does not choose to recognize him as the owner, and therefore he is not to be permitted to have the fraction separately assessed? Though not the owner he has an interest which he is entitled to protect, and in order that he may protect it, he is entitled to have it, on his application, separately assessed. By refusing this the city, having sold him, for example, a strip of land only an inch in width, compels him to pay the taxes on the entire lot in order to save his minute fraction from being again sold. And if he pays on the entire lot, and the owner comes to redeem before the two years expire, what is to be the redemption? The purchaser should contend with great equity, that he ought to be refunded all the taxes the city has obliged him pay, and the owner on the other hand would insist that the law only required him to refund the taxes paid on the fraction sold. We think it just in itself and better for all parties, that a person having purchased a fraction of a lot, whether great or small, should be permitted, on his application, to list it and pay the taxes on it."

In addition to the clear legal rights obtained by the holder of a tax certificate for the one vigintillionth off the east side of a tract of land, the undisputed evidence in this case is that in Cook county such a sale is regarded by lawyers as a cloud upon the title, and is an obstacle in the way of closing a sale or negotiating a loan.

The notice given to appellant by appellee not to buy or purchase such tax certificate did not affect appellant's rights under the mortgage deed. Had appellant paid off the

mortgage, he could have taken whatever chances on the validity of this certificate he saw fit. No one save himself and a mere holder of the certificate would have been concerned. As it was, he had covenanted to pay the tax which this certificate represented, was bound in good faith, law and morals to protect the lien of appellee from all clouds, great or small, trifling or fatal, and could not compel appellant to run the risk of, or wait for the result of his, appellee's, experimental defiance of the holder of what he assumed to be no cloud on the title of his premises.

Nor can we concur with the contention of appellee that any of the certificates of sale obtained by appellant have been rendered nugatory by its failure to pay taxes subsequently assessed thereon. As we have before said, appellant could not obtain, by virtue of these certificates, any tax title that could be held in hostility to the rights of appellee otherwise than as a lien on the premises. So soon as these certificates came to the ownership of appellant, they ceased to be certificates under which any title to said premises hostile to appellee could be obtained. They were merely evidence showing the amount which appellant had paid to remove claims upon said premises and appellant has never attempted to use them for any other purpose.

Nor is there, as we have already said, anything to show that it ever contemplated making any other use of them.

Doubtless, as between appellee and a tax buyer, who sustained no relation to him, appellee could have elected to redeem from such tax sales or to entirely disregard them, just as an independent tax buyer could have refused to assign such certificates to appellee, and stood upon his strict legal rights, compelling appellee to redeem from such sale in accordance with the statute, or suffering the holder of such certificates, complying with the statute in respect to the payment of future taxes, giving the notice, etc., to obtain a tax deed of the premises sold.

From what has been said, it follows that the tender made by appellee at the conclusion of taking testimony before the master was insufficient.

We see no reason why appellant should not, upon this foreclosure sale, be allowed costs as in other cases.

The decree of the Circuit Court is reversed, and the cause remanded with directions to enter a decree that unless within a short time, to be fixed by the court, appellee pay to appellant, or into court for its use, in addition to the amount already paid, the sum of $716.06, paid by appellant, the Connecticut Mutual Life Insurance Company et al., for tax sale made on November 4, 1893, with interest thereon at the rate of eight per cent per annum from December 9, 1893, being the time of such payment by appellant, and also pay the sum of $858.51, paid by appellant, for the tax sale made on November 14, 1893, with interest thereon at the rate of eight per cent per annum from said 9th day of December, 1893, and also pay the sum of $754.16 paid by appellant, for the tax sale made on October 24, 1894, with interest thereon at the rate of eight per cent per annum, from December 1, 1894, being the time of such payment by appellant, and also pay the costs in the court below, to be taxed, that the said mortgaged premises · be sold at foreclosure sale.   Reversed and remanded with directions.

Mr. Justice Shepard.

I do not fully concur.   As to the sale of the one-vigintillionth part, etc., I agree that the question is not the strict one that would arise between the owner and the tax sale puschaser, and that therefore, as between the mortgagor and mortgagee under the conditions and stipulations of the mortgage, the appellee was bound to pay the amount of the tax to the appellant.

But as to the penalty on that sale, and on the other sales, being a proper charge against the appellee, I do not agree with the majority of the court, and for this reason :   Under the facts disclosed, the purchase at each of the tax sales was made for the appellee.   In other words, Hamilton, the purchaser, was the agent of the appellant in such matter.

There were then two courses open to the appellant, one, the course pursued, that of buying at the sale, or the other,

that of paying the tax, either one of which would have afforded equal protection to it. Under such circumstances the mortgagee, appellant, was in equity bound to pursue the course least injurious to the mortgagor. The appellant should therefore receive only the amount of the tax in each case, with interest at the rate provided by the mortgage, and should not receive any part of the statutory penalty.